IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**RMS WAREHOUSE 1315, LLC**                                                                                      **PLAINTIFF**

**V.**                                              **CASE NO. 5:22-CV-5114**

**OWNERS INSURANCE COMPANY**                                                                       **DEFENDANT**

### OPINION AND ORDER

Before the Court are Defendant Owners Insurance Company's Motion for Partial Summary Judgment (Doc. 33), Plaintiff RMS Warehouse 1315, LLC's Response in Opposition (Doc. 41), and Owners's Reply (Doc. 50).[1] Owners moves for summary judgment as to Count II of the Complaint, which is a claim of bad faith, and Count III, which requests that Owners be ordered to pay a penalty and attorney's fees under Arkansas Code § 23-79-208 if RMS prevails on its breach-of-contract claim. Separately, Owners argues the Court should make a finding that there no evidence to support a punitive damages instruction.

The Motion does not concern Count I, the claim for breach of contract. Owners concedes there is a genuine, material dispute as to whether it wrongly denied coverage to RMS for property damage caused by two storms.

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Comm. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th

---

[1] The Court also considered Owners's Exhibits (Docs. 34 & 35), Brief in Support (Doc. 36), and Statement of Undisputed Facts (Doc. 37), and RMS's Response to Owners's Statement of Facts (Doc. 42).

1

Cir. 1999). When no material facts are in dispute, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). In order to establish there is a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## I.   COUNT II:  BAD FAITH

The tort of bad faith is established when "an insurance company affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured." *Selmon v. Metro. Life Ins. Co.*, 372 Ark. 420, 426 (2008) (quoting *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 429 (2002)). The tort requires evidence of "a state of mind characterized by hatred, ill will, or a spirit of revenge." *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 628 (2005) (quotation marks and citation omitted). Importantly, bad faith "does not arise from a mere denial of a claim; there must be affirmative misconduct." *Selmon*, 372 Ark. at 426 (citation omitted).

Examples of affirmative misconduct rising to the level of bad faith include an insurance agent lying to an insured "by stating there was no insurance coverage," engaging in "aggressive, abusive, and coercive conduct," or "intentionally alter[ing] insurance records to avoid a bad risk." *State Auto Prop. and Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 58 (1999) (citations omitted). By contrast, "a mistake on an insurance carrier's part or negligence or confusion or bad judgment will not suffice to substantiate the tort of bad faith." *Id.*

Plaintiff RMS contends its two claims of loss should have been covered under the policy of insurance it had with Owners. The first loss occurred on May 4, 2020, following a hailstorm that caused damage to RMS's warehouse. The second loss was in February 2021, after a winter storm event. RMS narrows its bad-faith claim to Owners's treatment of the winter-storm claim and explicitly states that Owners *did not* act in bad faith with respect to the hailstorm claim. *See* Doc. 41, p. 3 n.2. The only evidence RMS cites in support of its bad-faith claim is the denial letter sent by insurance adjuster Brian Doherty. RMS believes Mr. Doherty "misrepresented" in the letter what the insurance policy actually provided and omitted reference to crucial portions of the policy that provided coverage. *See id.* at pp. 7–8 (citing to the policy).

RMS's bad-faith claim hinges on Mr. Doherty's reasons for denying the winter-storm loss. Summary judgment should be denied if RMS can point to material facts to show that Mr. Doherty's denial letter was written with a spirit of ill will or malice, or that Mr. Doherty knew coverage was owed to RMS but denied coverage anyway.

RMS's Brief in Opposition to Summary Judgment is a multi-page explanation of why Owners wrongly denied coverage. Very little of the brief discusses bad faith.[2] RMS cites no evidence to show Mr. Doherty or anyone else at Owners reviewed the claims of loss and issued denial letters out of actual malice rather than negligence, bad judgment, or a good-faith disagreement about how the policy's terms should be interpreted. It bears mentioning that RMS could have moved for summary judgment on the breach-of-contract

---

[2] For example, RMS accuses Owners of "dishonestly" refusing to pay claims but offers no factual support for this assertion. *See* Doc. 41, p. 9. What RMS really means is that an "honest" reading of the policy would require payment of RMS's claims of loss, while a "dishonest" reading of the policy would result in a refusal to pay.

3

claim but chose not to—even though RMS's position is that coverage is obvious from the language of the policy.

"The standard for establishing a claim for bad faith is rigorous and difficult to satisfy." *Edwards*, 362 Ark. at 627. RMS betrays a fundamental misunderstanding about the tort when, at one point in its briefing, it characterizes Owners's actions as "[a]t best . . . a mistake," (Doc. 41, p. 17), and in response to Owners's Statement of Undisputed Facts, accuses Owners of "improper and unlawful denial of the winter storm claim . . . and refusal to reverse course despite clear and convincing evidence of its error," (Doc. 42, p. 4). Neither a mistake nor a "refusal to pay a disputed claim" is tortious behavior according to Arkansas law. *Stevenson v. Union Standard Ins. Co.*, 294 Ark. 651, 656 (1988).

Summary judgment on Count II, the tort of bad faith, is therefore **GRANTED**. As a consequence, RMS is not entitled to a punitive damages instruction. *See Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 858 (8th Cir. 2013) (finding that "[p]unitive damages are appropriate to deter bad faith by insurance companies," and absent evidence of bad faith, punitive damages are not available); *Delta Rice Mill v. Gen. Foods*, 763 F.2d 1001, 1006 (8th Cir. 1985) (holding punitive damages are unavailable for breach of contract claims under Arkansas law).

## II. COUNT III: PENALTY AND FEES UNDER ARKANSAS CODE § 23-79-208

Owners also argues in favor of dismissing Count III, which is a claim for attorney's fees and a statutory penalty under Arkansas Code § 23-79-208. The Court observes that the relief provided in this statute is a remedy, not a separate cause of action. But setting that matter aside, Owners asks the Court to make a finding that even if RMS prevailed at

4

trial on its breach-of-contract claim, it would not be entitled to collect a penalty and fees under § 23-79-208 for two reasons: (1) Owners acted promptly in investigating and denying the claims of loss and (2) RMS did not give Owners a reasonable amount of time to investigate the claims before RMS filed suit.

The statute in question was meant to target insurance companies' unwarranted delay tactics. *See State Farm Auto. Ins. Co. v. Stamps*, 104 Ark. App. 308, 312 (2009). Owners argues that RMS waited nearly a year before it challenged the denial of coverage decision. Then, after RMS submitted its proof-of-loss statements and supporting documents to Owners, RMS waited only 44 days to file suit. Owners maintains that 44 days was not long enough for it to meaningfully investigate and reconsider the coverage decision.

The plain language of § 23-79-208 states that an insured is entitled to be reimbursed for its losses, plus a 12% penalty and reasonable attorney's fees, if the insurer "fail[s] to pay the [insured's] losses within the time specified in the policy, after demand is made." Ark. Code Ann. § 23-79-208(a)(1). The statute must be strictly complied with even when the insurer has contested coverage in good faith. *See Home Mut. Fire Ins. Co. v. Jones*, 63 Ark. App. 221, 231 (1998).

The parties agree that Owners mailed denial-of-coverage letters to RMS on September 7, 2021. Owners's decision to deny coverage was based almost exclusively on a 68-page report authored by a professional engineer hired by Owners in 2021 to inspect RMS's warehouse. On May 2, 2022, RMS submitted sworn proof-of-loss statements to Owners, including detailed repair estimates. According to the policy, Owners was obligated to "pay for covered loss or damage within 30 days after . . .

5

receiv[ing] the sworn proof of loss." (Doc. 34-1, p. 21).  Owners did not pay RMS's claims within 30 days of receiving the proof-of-loss statements, and RMS filed this lawsuit 14 days later, on June 15, 2022.

Based on the above facts, the Court cannot find as a matter of law that RMS will not be entitled to relief under § 23-79-208 if it prevails at trial against Owners on the breach-of-contract claim.  Summary judgment on Count III is therefore **DENIED**.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Defendant Owners Insurance Company's Motion for Partial Summary Judgment (Doc. 33) is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **GRANTED** as to Count II, and the claim of bad faith is **DISMISSED WITH PREJUDICE**; as a result, RMS will not be entitled to an instruction on punitive damages.  The Motion is **DENIED** as to Count III, which concerns relief under Arkansas Code § 23-79-208.

**IT IS SO ORDERED** on this 7th day of July, 2023.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE